IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SAMUEL CARRODO, | : | CIVIL ACTION |
|     Plaintiff, | : | |
| | : | No. |
| v. | : | |
| | : | |
| THE COCA-COLA COMPANY, DOUG | : | |
| NEIMEYER, DIANA BALL, JAN | : | JURY TRIAL DEMANDED |
| JENKINS, PAT BLONDELL and | : | |
| STEVE MORROW, | : | |
|     Defendants. | : | |

## COMPLAINT

### I. PRELIMINARY STATEMENT

This is an action for damages, declaratory and injunctive relief, attorney fees and other relief on behalf of Plaintiff, Samuel Carrodo ("Carrodo" or "Plaintiff"). Carrodo was an employee of Coca-Cola North America and The Coca-Cola Company, Allentown, Pennsylvania, who has been harmed by the failure to accommodate a known disability and retaliatory practices as well as other improper conduct by Defendant, The Coca-Cola Company (hereinafter "Coca-Cola"), and its agents, servants and representatives and Individual Defendants ("Individual Defendants") named herein.

This action is brought under Title I and Title II of the Americans with Disabilities Act of 1990 ("ADA"), as amended, 42 U.S.C. § 12101, 42 U.S.C. § 1983 and Pennsylvania common law.

### II. JURISDICTION AND VENUE

1. The original jurisdiction and venue of this Court is invoked pursuant to 29 U.S.C. § 621 *et seq.*, Section 107 (a) of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 1983, 28 U.S.C. §§ 1331,1332 and 1391, 2201, 2202, 1343, and the claim is substantively based on 29 U.S.C. § 621 *et seq.*, Section 107 (a) of the Americans with Disabilities Act of 1990.

2. Venue is proper in the Eastern District of Pennsylvania in that some or all of the events complained of herein occurred in Coca-Cola, Pennsylvania, and/or some or all of the Defendants herein reside or have their principal place of business within the boundaries of this District.

3. All conditions precedent to the institution of this suit have been fulfilled. Carrodo filed a Charge of Employment Discrimination with the Equal Employment Opportunity Commission ("EEOC") on September 20, 2004, within 300 days of the unfair employment practice and the Pennsylvania Human Relations Commission ("PHRC") against the Defendant within 180 days of the unfair employment practice. On April 13, 2004, the Equal Employment Opportunity Commission issued a Notice of Right to Sue. This action has been filed within ninety (90) days of receipt of said Notice.

### III.  PARTIES

4. Plaintiff, Samuel Carrodo, is an adult male citizen and resident of the Commonwealth of Pennsylvania, residing at 1523 Bonnie Drive, Bethlehem, Pennsylvania. Carrodo all times relevant herein was employed as a Production Technician/Shipper in Defendant Coca-Cola's Allentown, Pennsylvania facility.

5. Defendant, The Coca-Cola Company, is a Delaware corporation doing business under the laws of the Commonwealth of Pennsylvania with a place of business at 7551 Schantz Road, Allentown, Pennsylvania.

6. At all times mentioned hereto, defendant Coca-Cola was a citizen of the State of Delaware.

7. Defendant Doug Neimeyer (hereinafter "Neimeyer") is a resident and citizen of the Commonwealth of Pennsylvania. At all times relevant hereto, Defendant Neimeyer was an agent, servant workman and/or employee of Defendant Coca-Cola, acting

and/or failing to act within the scope, course, and authority of his employment and his employer, Coca-Cola. At all times relevant, Neimeyer was acting in his supervisory and/or personal capacity.

8. Defendant Diana Ball (hereinafter "Ball") is a resident and citizen of the Commonwealth of Pennsylvania. At all times relevant hereto, Defendant Ball was an agent, servant workman and/or employee of Defendant Coca-Cola, acting and/or failing to act within the scope, course, and authority of her employment and her employer, Coca-Cola. At all times relevant, Ball was acting in her supervisory and/or personal capacity.

9. Defendant Jan Jenkins (hereinafter "Jenkins") is a resident and citizen of the Commonwealth of Pennsylvania. At all times relevant hereto, Defendant Jenkins was an agent, servant workman and/or employee of Defendant Coca-Cola, acting and/or failing to act within the scope, course, and authority of her employment and her employer, Coca-Cola. At all times relevant, Jenkins was acting in her supervisory and/or personal capacity.

10. Defendant Pat Blondell (hereinafter "Blondell") is a resident and citizen of the Commonwealth of Pennsylvania. At all times relevant hereto, Defendant Blondell was an agent, servant workman and/or employee of Defendant Coca-Cola, acting and/or failing to act within the scope, course, and authority of his employment and his employer, Coca-Cola. At all times relevant, Blondell was acting in his supervisory and/or personal capacity.

11. Defendant Steve Morrow (hereinafter "Morrow") is a resident and citizen of the Commonwealth of Pennsylvania. At all times relevant hereto, Defendant Morrow was an agent, servant workman and/or employee of Defendant Coca-Cola, acting and/or failing to act within the scope, course, and authority of his employment and his employer, Coca-Cola. At all times relevant, Morrow was acting in his supervisory

and/or personal capacity.

12. At all times relevant hereto, Coca-Cola was acting through its agents, servants and employees including Defendants Neimeyer, Ball, Jenkin, Blondell and Morrow who are collectively referred to as "the Individual Defendants."

13. At all times relevant hereto, Defendant Coca-Cola owned, operated, controlled and managed the facility located at 1523 Schantz Road, Allentown, Pennsylvania by and through the conduct of its officers, managers, agents and employees, all acting within the scope and course of their employment.

14. At all times relevant hereto, Defendant Coca-Cola acted by and/or failed to act by and through the conduct of its officers, managers, agents and employees, all acting within the scope and course of their employment.

15. At all times relevant herein, Coca-Cola has been a "covered entity" under Section 101 (2) of the ADA, 42 U.S. C. § 12111 (2).

16. At all times relevant herein, Coca-Cola was acting through its agents, servants and employees, who were acting within the scope of their authority, course of employment and under the direct control of Coca-Cola.

17. At all times relevant herein, Coca-Cola has continuously been and is now doing business in the Commonwealth of Pennsylvania, and has continuously had at least twenty (20) employees.

18. At all times relevant herein, Carrodo was an "employee" as defined by the Americans with Disabilities Act, 42 U.S.C. § 12111(4), and is subject to the provisions of said Act.

19. At all times relevant herein, Carrodo was "disabled" as defined by the Americans with Disabilities Act, 42 U.S.C. §12102 (2), and is subject to the provisions of said Act.

20. At all times relevant herein, Carrodo was a "qualified individual with a disability" as

defined by the Americans with Disabilities Act, 42 U.S.C. § 12111(8), and is subject to the provisions of said Act.

21. At all times relevant herein, Coca-Cola was an "employer" and "person" as defined by the Americans with Disabilities Act, 42 U.S.C. § 12111(5)-(7) and is subject to the provisions of said Act.

22. Coca-Cola has, acting through its agents, servants and representatives, on more than one occasion, met with Carrodo and was aware of his disability of herniated and/or bulging discs, which limits him in the major life activities of walking, bending, lifting and reaching.

23. Coca-Cola has, acting though its agents, servants and representatives, on more than one occasion, failed to accommodate Carrodo's disability.

24. At all times relevant hereto, Defendant Coca-Cola acted by and/or failed to act by and through the conduct of its officers, managers, agents and employees, all acting within the scope and course of their employment.

25. Defendant Coca-Cola has, acting through its agents, servants and representatives, on more than one occasion, met with Plaintiff, and has heard requests for an accommodation due to Plaintiff's back disability.

26. Defendant Coca-Cola has, acting through its agents, servants and representatives, on more than one occasion, received medical documentation and doctor's notes describing Plaintiff's condition.

27. Plaintiff repeatedly requested accommodation, including without limitation, medical leave and work with no heavy lifting and bending.

28. The accommodation requested by Plaintiff was not unduly burdensome to the Defendant employer.

29. The Defendant employer failed to engage in the interactive process with Plaintiff as required under the ADA.

30. Defendant Coca-Cola has, acting through its agents, servants and representatives, on more than one occasion, failed to accommodate Plaintiff's disability.

31. Defendant Coca-Cola has, acting through its agents, servants and representatives, on more than one occasion, discriminated against Plaintiff based on his disabilities.

32. At all relevant times herein, Defendants Coca-Cola, and/or Neimeyer, and/or Ball, and/or Jenkins, and/or Blondell and/or Morrow knew, or had reason to know, of the actions and inaction alleged herein and/or has personally participated in some of said actions and is ultimately responsible for same.

33. At all relevant times, Defendant Coca-Cola acted by and/or failed to act by and through the conduct of its officers, managers, agents and employees, all acting within the scope of their employment.

34. Defendant Coca-Cola has, acting through its agents, servants and representatives, on more than one occasion, met with Plaintiff, and has heard from Plaintiff requests for an accommodation due to Plaintiff's disability.

35. In retaliation for Samuel Carrodo's reporting the failure to accommodate his disability to which he was exposed, he was fired from his job by Defendants Jenkins and Morrow with the knowledge and acquiescence of Defendant Coca-Cola.

IV. **STATEMENT OF CLAIM**

36. Plaintiff, Samuel Carrodo, was hired by Defendant Coca-Cola on or about March 2000.

37. Throughout Carrodo's employment from March 2000, through May 26, 2004, when he was fired, Carrodo maintained a satisfactory work record with his employer, Coca-

Cola.

38. As a Production Technician/Shipper, Carrodo's job responsibilities included, *inter alia* assigning shipments, inputting all paperwork into computer for shipments, overseeing staff, loading trucks and coordinating truck moves.

39. At all times relevant herein, Coca-Cola employed the following individuals who acted as Coca-Cola' agents in the following capacities at Coca-Cola's place of business, and who were not disabled: Defendant Neimeyer, Logistics Manager; Defendant Ball, Human Resource Manager; Defendant Jenkins, Production Manager; and Defendant Morrow, General Manager.

40. Defendants Neimeyer, and/or Ball, and/or Jenkins, and/or Blondell and/or Morrow all had knowledge of the aforementioned conduct and/or participated in same and all failed to take any action despite their actual knowledge of the conduct and despite Plaintiff's repeated complaints to them about his disability and requests for an accommodation by Plaintiff.

41. In or about December 2002, Plaintiff was diagnosed with two bulging and herniated discs.

42. In or about January 2003, Plaintiff was on approved leave for surgery related to his disabling condition.

43. Carrodo was out on approved leave from January 2003 through August 4, 2003. After his surgery, Carrodo remained disabled in that he continued to have significant restrictions. However, Plaintiff could have performed all of the essential functions of his position with Defendant Coca-Cola with Defendant's accommodations.

44. On or about August 4, 2003, Carrodo told Defendants Jenkins and Ball that he could return to work with accommodations.

45. Plaintiff's medical condition (disability) forced him to request an accommodation

from heavy lifting and bending.

46. Carrodo was told by Defendant Jenkins that she wanted Plaintiff to work in a new position in the "GBULK" Department which would not accommodate his disabling condition.

47. Plaintiff reminded Jenkins that his physician had instructed him not to work in the new position without accommodations because it required heavy lifting and bending.

48. Defendant Neimeyer subsequently told Plaintiff that there was a job for him to do in his former position—before he had been on medical leave. He also told Plaintiff that it was necessary because they "were short handed."

49. Defendants Jenkins and Ball spoke to Plaintiff's doctor.

50. Defendant Jenkins subsequently told Plaintiff that he could "only have the new position or nothing."

51. In or about August, 2003, Blondell asked Plaintiff "why was it taking so long" for him to return to work.

52. On or about January 4, 2004, Defendants Jenkins and Ball called Plaintiff and gave him his old job back.

53. On or about January 18, 2004, Defendant Jenkins moved Plaintiff to a position in the GBULK Department as a GBULK machine trainee, not withstanding the fact that they had refused to accommodate him in this position.

54. Approximately eight days later, on or about January 26, 2004, Jenkins moved Plaintiff to a position in the GBULK Department as a Hose Cleaner which required heavy lifting and bending.

55. On or about on January 26, 2004, Plaintiff suffered a work related accident in which he sustained a serious permanent medical condition that significantly impaired him

in several major life activities, including but not limited to bending, walking, lifting, and reaching.

56. On or about January 26, 2005, because of the work-related injury of a torn rotator cuff in his right shoulder, a torn medial menisus and back and neck injuries, Samuel Carrodo was on approved leave until April 13, 2004.

57. On or about April 13, 2004, Plaintiff informed Defendants Morrow and Jenkins by letter that he could come back to work with accommodations of no bending, walking, lifting and reaching.

58. On or about April 26, 2004, Samuel Carrodo was advised by letter from Defendants Jenkins and Ball that there was no job available and that he would be terminated as of May 26, 2004.

59. Plaintiff believes and, therefore avers, that this statement by Defendants Jenkins and Ball was untrue and a pretext for his firing because Plaintiff was aware of positions open, including but not limited to, Floor Scrubber Machine Operator and Dock Meister, which job duties Plaintiff could perform without any accommodation.

60. Carrodo was at all time fully able to perform all of the essential functions of a Production Technician/Shipper with reasonable accommodations.

61. Plaintiff had requested, without limitation, an accommodation for no bending for long periods of time and no heavy lifting.

62. This accommodation was a reasonable accommodation and did not impose any undue hardship on the part of the employer.

63. At all relevant times as above stated, Defendant Coca-Cola, acting through its supervisory employees, Defendants Neimeyer, Ball, Jenkins, Blondell and Morrow denied Carrodo's requests for accommodation.

64. As a direct and proximate result of Defendants' conduct, Plaintiff has suffered damages due to pain, suffering, mental anguish, fear, anxiety, sleeplessness, humiliation and severe emotional, psychological and physical distress.

65. As a direct and proximate result of Defendants' invidiously discriminatory actions, as aforesaid, Plaintiff has suffered damages due to loss of past income, benefits and earnings in excess of One Hundred Thousand Dollars ($100,000.00).

66. As a direct and proximate result of Defendants' invidiously discriminatory actions, as aforesaid, Plaintiff has suffered damages due to loss of future income, benefits, earnings and earnings capacity in excess of One Hundred Thousand Dollars ($100,000.00).

67. Plaintiff seeks reinstatement to his former position, together with back pay, compensatory and other damages set forth herein.

68. Defendants' aforesaid actions were outrageous, egregious, preposterous, malicious, intentional, willful, wanton and in reckless disregard of Carrodo's rights, entitling Carrodo to punitive damages in excess of One Hundred Thousand Dollars ($100,000.00).

**COUNT I**
**SAMUEL CARRODO**
**v.**
**COCA-COLA**
**<u>VIOLATION OF THE AMERICANS WITH DISABILITIES ACT</u>**

69. Paragraphs 1 through 68 inclusive, are incorporated by reference as if fully set forth at length herein.

70. At all times relevant herein, Carrodo was regarded as disabled by Defendants.

71. At all times relevant herein, Carrodo suffered from a condition that limits major life activities, including but not limited to bending, walking, lifting and reaching.

72. Carrodo was able to perform all of the essential functions of the position of Shipper without accommodation.

73. Carrodo required and requested accommodations as set forth above.

74. Defendant was not prevented from accommodating Plaintiff by any rule or regulation of any governmental agency.

75. Coca-Cola intentionally, knowingly and purposefully violated the Americans with Disabilities Act by invidiously discriminating against the qualified Carrodo who had a disability.

76. By its actions and inactions through its agents, servants and representatives, Coca-Cola created, maintained and permitted to be maintained a work environment which was hostile to persons such as Plaintiff who have or are perceived as having a disability.

77. In or about May 26, 2004, as a direct result of Plaintiff's disability, Defendant actually or constructively terminated Plaintiff's employment.

78. Defendants' aforesaid actions were outrageous, egregious, malicious, intentional, willful, wanton and in reckless disregard of Carrodo's rights, entitling Carrodo to punitive damages in excess of One Hundred Thousand Dollars ($100,000.00).

## COUNT II
## SAMUEL CARRODO
## v.
## COCA-COLA
## RETALIATION UNDER THE ADA

79. Paragraphs 1 through 78 inclusive, are incorporated by reference as if fully set forth at length herein.

80. By the acts complained of, Defendants have retaliated against Plaintiff for exercising

his rights under the Americans with Disabilities Act in violation of the Act.

81. Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages as a result of Defendants' retaliatory practices unless and until this Court grants relief.

**COUNT III**
**SAMUEL CARRODO**
**v.**
**NEIMEYER, BALL JENKIN, BONDELL and MORROW**
**INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**

82. Paragraphs 1 through 81 inclusive, are incorporated by reference as if fully set forth at length herein.

83. Defendants' conduct was intentional, reckless, extreme and outrageous.

84. As a direct result of Defendants' conduct, Carrodo suffered extreme emotional distress.

**COUNT IV**
**SAMUEL CARRODO**
**v.**
**COCA-COLA, NEIMEYER, BALL, JENKIN, BONDELL and MORROW**
**WRONGFUL DISCHARGE**

85. Paragraphs 1 through 84 inclusive, are incorporated by reference as if fully set forth at length herein.

86. Defendants' action in terminating Plaintiff was in whole or part in retaliation for making a claim under the Pennsylvania Workers Compensation Act.

87. Defendants' termination of Plaintiff was in violation of the public policy of the Commonwealth of Pennsylvania.

88. As a result of the wrongful termination of his employment, Plaintiff has suffered the injuries and damages set forth above.

**STATEMENT OF FACTS JUSTIFYING**
**THE IMPOSITION OF PUNITIVE DAMAGES**

89. Paragraphs 1 through 88 inclusive, are incorporated by reference as if fully set forth at length herein.

90. At all times relevant hereto, Defendants Neimeyer, and/or Ball, and/or Jenkins, and/or Blondell and/or Morrow acted willfully, wantonly, recklessly and with an outrageous disregard and indifference to the rights, safety and well being of the Plaintiff and other employees similarly situated.

**V. PRAYER FOR RELIEF**

91. Plaintiff incorporates by reference paragraphs 1 through 90 of his Complaint as though fully set forth at length herein.

WHEREFORE, Plaintiff, respectfully request the Court to:

a. Exercise jurisdiction over his claim;

b. Issue declaratory and injunctive relief declaring the above-described practices to be unlawful, and enjoining their past and continued effects;

c. Award Carrodo compensatory damages, including but not limited to reimbursement of all medical and psychological expenses; back pay and future earnings and loss of earning capacity in the amount of wages and benefits; damages for his mental, psychological and emotional injuries, anguish, humiliation, anxiety, physical and mental pain and suffering and loss of life's pleasures, all of which may be permanent, together with interest, resulting from Defendants' discriminatory and tortious conduct;

d. Award Carrodo punitive damages as may be justified under the circumstances and available under law.

e. Reinstate Carrodo to his former position together with back pay and compensatory

      damages;

  f.  Award Carrodo, his attorneys' fees and costs; and

  g.  Grant such other relief as the Court deems just and equitable.

## JURY DEMAND

Plaintiff, Samuel Carrodo, demands trial by jury.

                                            **HAHALIS & KOUNOUPIS, P.C.**

                                            By:_____
                                                  George S. Kounoupis, Esquire
                                                  Nancy S. Skalangya, Esquire
                                                  20 East Broad Street
                                                  Bethlehem, PA  18018
                                                  (610) 865-2608
                                                  Attorneys for Plaintiff, Samuel Carrodo

DATE:  June 30, 2005